## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ARTHUR GONZALEZ, in his personal capacity and in his official capacity as Member of the Federal Oversight and Management Board for Puerto Rico**<br><br>**ANDREW G. BIGGS, in his personal capacity and in his official capacity as Member of the Federal Oversight and Management Board for Puerto Rico**<br><br>**BETTY A. ROSA, in her personal capacity and in her official capacity as Member of the Federal Oversight and Management Board for Puerto Rico**<br><br>*Plaintiffs*,<br>**v.**<br><br>**SERGIO GOR, in his official capacity as Director of the White House Personnel Office**<br><br>**JOHN E. NIXON, in his official capacity as Member of the Federal Oversight and Management Board for Puerto Rico**<br><br>**ROBERT F. MUJICA, in his official capacity as the Executive Director of the Federal Oversight and Management Board for Puerto Rico**<br><br>**DONALD J. TRUMP, in his official capacity as President of the United States of America**<br><br>*Defendants*. | **No. 25-CV-1508 (MAJ)** |

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs Arthur J. Gonzalez, Andrew G. Biggs, and Betty A Rosa serve on the Federal Oversight and Management Board for Puerto Rico—an agency of the Commonwealth of Puerto Rico responsible for overseeing the fiscal restructuring of the Commonwealth. In that role, they

serve not as federal officers within the executive branch of the United States (*i.e.*, under the authority of Article II of the Constitution), but instead as officers within the territorial government of Puerto Rico established pursuant to Congress's Article IV powers.  During their tenure on the Oversight Board, they have helped to save Puerto Rico tens of billions of dollars in debt payments and have put onto sound financial footing a dozen critical components of the Commonwealth, including the Employment Retirement System, the Public Building Authority, and the Puerto Rico Highway and Transportation Authority.

Presidents of both political parties—Barack Obama, Donald Trump in his first term, and Joseph Biden—have appointed or reappointed Judge Gonzalez, Dr. Biggs, and Dr. Rosa to repeated three-year terms on the Board.  Their current terms expire in 2027.  By law, the President may remove Board members "*only* for cause."  42 U.S.C. § 2121(e)(5)(B) (emphasis added).

But last month, without any warning, the President purported to remove Judge Gonzalez, Dr. Biggs, and Dr. Rosa while failing to provide any cause whatsoever.  On August 1, 2025, Judge Gonzalez and Dr. Rosa received identical emails telling them that their position as a member on the Oversight Board was "terminated effective immediately."  The emails included no further explanation.  The same day, the Executive Branch purported to remove three other Board members, leaving only two members remaining on the seven-member Board.  When Dr. Biggs, who was not among the five members originally removed, learned about the purported removals, he posted on X that he was "proud to have served" with his five Board colleagues "who worked for years, unpaid and often unfairly criticized, to improve life for the 3 million US citizens living in Puerto Rico" and who "deserve everyone's gratitude."  One week later, seemingly in retaliation for his innocuous remarks, Dr. Biggs received an email informing him that he, too, was "terminated effectively immediately" from the Oversight Board.

Board Members do not serve at will.  They can be removed "only for cause," 42 U.S.C. § 2121(e)(5)(B), a provision designed to prevent meddling by the executive branch in the Board's important work for improper reasons.  The purported removals of Judge Gonzalez, Dr. Biggs, and Dr. Rosa from the Oversight Board—without any explanation, without any notice, and without an opportunity to be heard—were plainly invalid under the law Congress passed.

This Court should provide immediate preliminary injunctive relief.[1]  To safeguard against the possibility that (1) the executive branch seeks unlawfully to replace Judge Gonzalez, Dr. Biggs, and Dr. Rosa on the Oversight Board while they challenge their purported removals, or (2) that the Oversight Board purports to act without its lawful members, Plaintiffs also request that the Court expedite the briefing and hearing on this preliminary injunction motion.

This matter is unlike the many other recent cases in which the President has attempted to remove principal officers who serve on independent agencies within the Executive branch.  In those cases, the government has claimed that the President has inherent executive authority to terminate federal officials without cause under Article II.  But whatever the merit of that argument, it holds no water here.  As the Supreme Court confirmed in 2020, Oversight Board members are *not* federal executive branch officers who fall within Article II.  *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, 590 U.S. 448, 465 (2020).  Instead, Oversight Board members are local territorial officials of Puerto Rico, serving under legislation that Congress enacted as part of its Article IV authority to "make all needful Rules and Regulations respecting" such territories.  U.S. Const., art. IV, § 3, cl. 2.  The Constitution does not permit the President to

---

[1] The Court may consolidate the hearing on a motion for a preliminary injunction with a trial on the merits, *see* Fed. R. Civ. P. 65(a)(2), and that step would be appropriate here to the extent the government does not object.  In that case, the Court should enter a permanent injunction.  *See Harris v. Bessent*, 775 F. Supp. 3d 164, 185-86 (D.D.C. 2025) (adopting that approach).

encroach on Congress's powers to regulate the territories and the District of Columbia, *see* U.S. Const. art. I, § 8, cl. 17; *id.* at art. IV, § 3, cl. 2, and the Court should not sanction such overreach.

## BACKGROUND

### I.    Legal Background

In 2016, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 ("PROMESA"), 48 U.S.C. § 2101 *et seq.*, to address the Commonwealth of Puerto Rico's soaring debt, which had overtaken the island's annual output.  The PROMESA created two pathways to help the Commonwealth address the debt crisis: (1) under what is known as Title III, the statute established a debt restructuring process drawn from the U.S. Bankruptcy Code, and (2) under what is known as Title VI, the statute set up a restructuring process "for voluntary collective action agreements, similar to procedures used in some sovereign debt negotiations."  Congressional Research Service, *Puerto Rico's Public Debts: Accumulation and Restructuring* 16 (May 2, 2022), https://www.congress.gov/crs-product/R46788.  In essence, the PROMESA permitted Puerto Rico and its entities to seek federal bankruptcy protection, which was otherwise not available. *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 342 (2023).

The PROMESA's "centerpiece" was the Federal Oversight and Management Board ("FOMB," or "the Board").  *Id.*  The FOMB's purpose is to enable Puerto Rico to "achieve fiscal responsibility and access to the capital markets."  48 U.S.C. § 2121(a).  To effectuate that purpose, the FOMB may hold hearings and receive evidence, obtain official data from both the federal government and the Commonwealth of Puerto Rico, obtain creditor information, issue subpoenas, enter into certain contracts, and "seek judicial enforcement of its authority to carry out its responsibilities."  *Id.* at § 2124(k); *see generally id.* at § 2124 (describing the FOMB's powers).

The FOMB also has several duties. It approves and enforces Puerto Rico's fiscal plans and budgets. *Id.* at §§ 2141-2144. It supervises Puerto Rico's borrowing. *Id.* at § 2147. And it represents Puerto Rico in Title III proceedings for restructuring Puerto Rico's debt. *See id.* at §§ 2161-77.

Congress provided that the FOMB will "terminate" when the Commonwealth of Puerto Rico "has adequate access to short-term and long-term credit markets at reasonable interest rates to meet [its] borrowing needs," and the Commonwealth maintains a balanced budget for four consecutive years. *Id.* at § 2149. In response to Congressional questions for the record, the FOMB Executive Director last month explained that the Commonwealth budget that the FOMB, the Governor of Puerto Rico, and the Puerto Rican Legislative Assembly developed for 2026 "could qualify as the first of the four consecutive balanced budgets for the Commonwealth under PROMESA[.]" Ex. 1 (Robert F. Mujica, Jr., Responses to Questions for the Record; Hearing Entitled "Puerto Rico's Fiscal Recovery Under PROMESA and the Road Ahead," p. 13 (Aug. 4, 2025)).

In creating the FOMB, Congress acted under its power to "make all needful Rules and Regulations respecting the Territory . . . belonging to the United States." U.S. Const. art. IV, § 3, cl. 2; 48 U.S.C. § 2121(b)(2) (invoking this constitutional provision). By statute, Congress established the FOMB "within" Puerto Rico's "territorial government" such that it "shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government." 48 U.S.C. § 2121(c). The Supreme Court has determined that the FOMB's structure, duties, and powers make it "part of the local Puerto Rican government." *Aurelius Inv., LLC*, 590 U.S. at 465.

5

The FOMB consists of seven members appointed by the President.  48 U.S.C. § 2121(e)(1).
Each Member must have "knowledge and expertise in finance, municipal bond markets,
management, law, or the organization or operation of business or government," *id.* at § 2121(f)(1),
and not be an officer, elected official, employee, candidate for elected office in, or a former elected
official, of the Puerto Rican government, *id.* at § 2121(f)(2).  Six of the seven Members appointed
by the President must "be by and with the advice and consent of the Senate" unless the President
appoints an individual on a list prepared by a Member of Congressional leadership as provided by
statute.  *Id.* at § 2121(e)(2)(E).  Of those six members:

- one must maintain a primary residence or a primary place of business in Puerto
  Rico and is selected from a list submitted by the Speaker of the House of
  Representatives;

- one is selected from a "non-overlapping list" submitted by the Speaker of the House
  of Representatives;

- two members are selected by a list submitted by the Majority Leader of the Senate;

- one member is selected from a list submitted by the Minority Leader of the House
  of Representatives; and

- one member is selected from a list submitted by the Minority Leader of the Senate.

*Id.* at §§ 2121(e)(1)(B) and (e)(2)(A).  The seventh member may be selected "in the President's
sole discretion."  *Id.* at § 2121(e)(2)(A)(vi).  The Governor of Puerto Rico (or the Governor's
designee) serves as an ex officio member without voting rights.  *Id.* at § 2121(e)(3).

Each member receives a three-year appointment, *id.* at § 2121(e)(5)(A), and may be
reappointed to serve consecutive terms, *id.* at § 2121(e)(5)(D).  A member may also continue to
serve after the three-year term has expired "until a successor has been appointed."  *Id.* at

§ 2121(e)(5)(C).  Members of the FOMB "serve without pay."  *Id.* at § 2121(g).  The President may remove a member from the FOMB "only for cause."  *Id.* at § 2121(e)(5)(B).

## II.    Factual Background

Plaintiff Arthur J. Gonzalez is a distinguished attorney, former judge, and current law professor.  He has served as an attorney for the Internal Revenue Service, as an Assistant United States Trustee, and as a judge and the chief judge on the United States Bankruptcy Court for the Southern District of New York.  Gonzalez Decl. ¶¶ 1-3.

Plaintiff Andrew G. Biggs is an expert on Social Security reform, state and local government pensions, and public sector pay and benefits.  He served on President George W. Bush's Commission to Strengthen Social Security and as the principal deputy commissioner overseeing policy research at the Social Security Administration, and recently published a book on retirement and Social Security.  Biggs Decl. ¶¶ 1-3.

Plaintiff Betty A. Rosa is the Commissioner of Education and President of the University of the State of New York.  She worked extensively in the New York City Department of Education, including as the Senior Superintendent for the Bronx, and, in addition to her current role as President of the University of the State of New York, she has also been on the Board of Regents and served as the University Chancellor.  Rosa Decl. ¶¶ 1-4.

After Congress enacted the PROMESA in 2016, President Barack Obama appointed both Judge Gonzalez and Dr. Biggs to serve as inaugural members on the FOMB.  Gonzalez Decl. ¶ 5; Biggs Decl. ¶ 4.  Judge Gonzalez was chosen as the President's discretionary selection.  Gonzalez Decl. ¶ 5.  Dr. Biggs was chosen from a list submitted by Senate Majority Leader Mitch McConnell.  Biggs Decl. ¶ 4.  Both Judge Gonzalez and Dr. Biggs have served on the FOMB since its creation, and both have been reappointed several times since 2016.  For example, Judge

Gonzalez was reappointed by President Trump as a candidate submitted by House Majority Leader Nancy Pelosi in January 2021 and reappointed by President Joseph Biden as a candidate submitted by House Majority Leader Hakeem Jeffries in October 2024. Gonzalez Decl. ¶ 5. Dr. Biggs was reappointed by President Trump as a candidate submitted by Senate Majority Leader McConnell in December 2020, and reappointed by President Biden as a candidate submitted by Senate Minority Leader McConnell in September 2024. Biggs Decl. ¶ 4. Both Judge Gonzalez's and Dr. Biggs's respective terms expire in 2027. *See* Gonzalez Decl. ¶ 5; Biggs Decl. ¶ 4.

Dr. Rosa's term also expires in 2027. *See* Rosa Decl. ¶ 6. She was first appointed to the Board on December 8, 2020, by President Trump, and she was re-appointed on June 26, 2024, by President Biden. *Id.* For both appointments, Dr. Rosa's candidacy was submitted by Senator Chuck Schumer. *Id.*

During the tenure of Judge Gonzalez, Dr. Biggs, Dr. Rosa, and their colleagues, the FOMB has made significant progress in reducing Puerto Rico's debt. In 2016 when the FOMB came into existence, the Commonwealth had to dedicate approximately 28 cents of every tax dollar to servicing debt; now, the amount needed for debt service "is closer to 6 cents of every dollar." Ex. 2 at 3 (Robert F. Mujica, Jr., FOMB Executive Director, Testimony Before the Subcommittee on Indian and Insular Affairs, at 3 (July 16, 2025). The FOMB has "saved Puerto Rico more than $72 billion in debt payments and reduced spending through right-sizing government spending to align expenses with revenues and other reforms." *Id.* at 4-5. The FOMB accomplished these savings by completing twelve debt restructurings including the Employment Retirement System, the Public Building Authority, the Government Development Bank, the Puerto Rico Sales Tax Financing Corporation, the Puerto Rico Aqueduct and Sewer Authority, the Puerto Rico Highway and Transportation Authority, the Puerto Rico Infrastructure Financing Authority, the Puerto Rico

Convention Center District Authority, the Puerto Rico Industrial Development Company, the Tourism Development Fund, and the Public Finance Corporation. *Id.* at 5. Those restructurings eliminated more than $55 billion in payments to creditors. *Id.*

Notwithstanding those achievements, the President purported last month to remove nearly all the members of the FOMB. On August 1, 2025, Judge Gonzalez and Dr. Rosa separately received an email from Trent M. Morse, Deputy Director of the White House Office of Presidential Personnel, which, after the salutation, stated in its entirety, "On behalf of President Donald J. Trump, I am writing to inform you that your position as a Member of the Financial Oversight Board for Puerto Rico is terminated effective immediately. Thank you for your service." Ex. 3; Gonzalez Decl. ¶ 6; Ex. 4; Rosa Decl. ¶ 7. On or about the same date, the President purported to remove three other members (Cameron McKenzie, Juan A. Sabater, and Luis A. Ubiñas) from the FOMB. *See* Ex. 5 (AP news article explaining that Trump administration dismisses a majority of Oversight Board members). As of that date, only Dr. Biggs and one other member, defendant John E. Nixon, remained on the FOMB.

When Dr. Biggs learned what had happened, he expressed support for his FOMB colleagues. On August 6, 2025, he posted the following message on the social media platform X: "I'm proud to have served with my five @fomb colleagues, who worked for years, unpaid and often unfairly criticized, to improve life for the 3 million US citizens living in Puerto Rico. They deserve everyone's gratitude, and they certainly have mine." Biggs Decl. ¶ 6; Ex. 6.

A week later, the President purported to remove Dr. Biggs as well. He received an email—also from Mr. Morse, Deputy Director of the White House Office of Presidential Personnel—nearly identical to the one sent to Judge Gonzalez. After the salutation, the email stated in its entirety, "On behalf of President Donald J. Trump, I am writing to inform you that your position

as a Member of the Financial Oversight Board for Puerto Rico is terminated effective immediately. Thank you for your service."  Ex. 7; Biggs Decl. ¶ 7.

The materially identical emails that Judge Gonzalez, Dr. Biggs, and Dr. Rosa received did not articulate any basis for their purported removals.  At no point since their terminations has anyone provided any notice to Judge Gonzalez, Dr. Biggs, or Dr. Rosa for the reasons for their purported removals, a hearing, or any opportunity to contest the basis of their supposed removals.

## LEGAL STANDARD

To obtain a preliminary injunction, plaintiffs must establish that: (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of the preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest."  *New Jersey v. Trump*, 131 F.4th 27, 33 (1st Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  The last two factors "merge" when the government is the party opposing the preliminary injunction.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The most important of the requirements—the "sine qua non" of the inquiry—is the likelihood of success on the merits.  *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020) (citation omitted).

## ARGUMENT

Judge Gonzalez, Dr. Biggs, and Dr. Rosa are entitled to relief on their claims that they were wrongfully removed without adequate process and in violation of their statutory "for cause" removal protections.  They are substantially likely to prevail on their substantive removal claims because the government never articulated any justification for their removals whatsoever and on their procedural claims because the government never provided any pre-removal process at all. Absent immediate injunctive relief, they will face the irreparable harm of being deprived of their

presidentially appointed roles on the FOMB—where they oversee the Commonwealth of Puerto Rico's ongoing debt restructuring—and could be unlawfully replaced. The balance of equities and public interest also strongly favor relief because the public has an interest in the FOMB functioning as Congress designed it and because allowing the removals to stand would imply the President could remove any officer in a federal territory or in the District of Columbia, notwithstanding the Constitution's commitment of those powers to Congress. *See* U.S. Const. art. I, § 8, cl. 17; *id.* at art. IV, § 3, cl. 2. In the alternative, Plaintiffs are entitled to mandamus relief because their entitlement to relief is clear, and they would have no other adequate remedy otherwise.

## I.    Plaintiffs Are Entitled to a Preliminary Injunction

### A.  Plaintiffs Have a Substantial Likelihood of Success on the Merits

Plaintiffs Arthur J. Gonzalez, Andrew G. Biggs, and Betty A. Rosa are substantially likely to prevail on their substantive and procedural claims: (1) as a substantive matter, the purported removals violated the statutory for-cause removal protections, and (2) as a procedural matter, the removals violated their statutory and constitutional rights because they occurred without notice or an opportunity to be heard. Finally, the for-cause removal statute itself is constitutional because it flows from Congress's constitutional authority to "make all needful Rules and Regulations respecting" a federal territory such as Puerto Rico. U.S. Const. art. IV, § 3, cl. 2. Whatever arguments the government has raised in other cases regarding the President's inherent Article II powers over the executive branch simply do not apply in this context.

#### 1.  Defendants unlawfully purported to remove Plaintiffs without cause.

Under the PROMESA, the President "may remove any member of the Oversight Board *only for cause.*" 48 U.S.C. § 2121(e)(5)(B) (emphasis added). The PROMESA does not define "cause," so the relevant inquiry is "what that term's 'ordinary, contemporary, common meaning'

was when Congress enacted" the statute in 2016.  *Food Mktg. Inst. v. Argus Leader Media*, 588

U.S. 427, 433-34 (2019) (quoting *Perrin v. United States*, 444 U.S. 37, 42, (1979)).  At a minimum,

"for cause" means "[f]or a legal reason or ground."  Black's Law Dictionary, *for cause* (2014 ed.);

*see id.* at *dismissal for cause* ("A dismissal of a contract employee for a reason that the law or

public policy has recognized as sufficient to warrant the employee's removal.").  In other words,

some articulated "legal reason or ground" must support removing a member from the FOMB.  That

does not exist here.  The emails to Judge Gonzalez, Dr. Biggs, and Dr. Rosa simply informed them

that they were "terminated effectively immediately" "on behalf of" the President.  The complete

failure to identify *any* reason or ground for the removals means Plaintiffs are substantially likely

to succeed on their claims that their removals violated the PROMESA's for-cause removal

protection.  No further analysis is required.[2]

> **2.    Defendants violated Plaintiffs' constitutional and statutory right to notice and a hearing.**

Judge Gonzalez, Dr. Biggs, and Dr. Rosa are also likely to succeed on their claims that the

purported terminations deprived them of their procedural due process rights under both the Fifth

Amendment and the PROMESA.  The executive branch provided Plaintiffs with no notice, no

hearing, and, indeed, no process whatsoever.  Judge Gonzalez, Dr. Biggs, and Dr. Rosa received

---

[2] To be sure, for-cause removal under the PROMESA almost certainly requires "more than just *any* stated reason[.]"  *Cook v. Trump*, No. 25-CV-2903, 2025 WL 2607761, at *5 (D.D.C. Sep. 9, 2025).  Analyzing a for-cause removal provision in the Federal Reserve Act, 12 U.S.C. § 242, a district court in the District of Columbia recently interpreted the term as "limited to grounds concerning an official's behavior in office and whether they have been faithfully and effectively executing statutory duties."  *Id.*  But this Court need not conclusively define "for cause" in the PROMESA to conclude that Judge Gonzalez, Dr. Biggs, and Dr. Rosa are substantially likely to prevail on the merits of their claims, as neither the President nor anyone acting on his behalf articulated any basis whatsoever for the removals of Judge Gonzalez, Dr. Rosa, and Dr. Biggs here.  And to be clear: Even if the executive branch had attempted to manufacture some cause to remove Plaintiffs, it would be meritless.  Judge Gonzalez, Dr. Biggs, and Dr. Rosa have not engaged in any conduct that could constitute cause.

only an email stating in a single sentence that their "position[s]" had been "terminated effective immediately." That cursory communication entirely failed to provide the requisite constitutional and statutory due process.

First, the purported terminations violated the Fifth Amendment of the U.S. Constitution. That Amendment's Due Process Clause guarantees that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has expressly stated that where a statute provides a public employee with for-cause removal protection, that employee possesses a property interest in his continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Judge Gonzalez, Dr. Biggs, and Dr. Rosa had a property interest in their continued position as a member on the FOMB because PROMESA establishes that Board Members may be removed prior to the expiration of their three-year term "only for cause." 48 U.S.C. § 2121(e)(5)(B). In this context, due process consists of at least "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546. Due process where termination must be for cause thus requires that an employee receive "notice of the reasons for a proposed termination, an explanation of the evidence supporting those reasons, and an opportunity to give their side of the story at a pre-termination hearing." *Eaton v. Town of Townsend*, No. 22-1334, 2023 WL 3317986, at *8 (1st Cir. May 9, 2023) (quoting *Jones v. City of Bos.*, 752 F.3d 38, 56-57 (1st Cir. 2014)); *see Loudermill*, 470 U.S. at 542 (hearing must occur "prior to the discharge of the employee"). Here, not one of these requirements was met before Judge Gonzalez, Dr. Biggs, and Dr. Rosa were—purportedly—summarily terminated by email.

Second, the purported terminations also contravened the statutory due process required by the PROMESA. Under binding precedent, "for cause" removal protections create a statutory right

to notice and a hearing.  *Reagan v. United States*, 182 U.S. 419, 425 (1901) ("[W]here the term of office is for a fixed period, notice and hearing are essential."); *see Shurtleff v. United States*, 189 U.S. 311, 314 (1903) ("It must be presumed that the President did not make the removal for any cause assigned in the statute, because there was given to the officer no notice or opportunity to defend.").  As described above, the PROMESA specifies that board members may be removed prior to the end of their terms "only for cause," thus requiring notice and a hearing before any such removal may take place.  48 U.S.C. § 2121(e)(5)(B).  The government has no serious argument that the termination emails sent to Judge Gonzalez, Dr. Biggs, and Dr. Rosa satisfied the notice and hearing requirements.

Accordingly, the attempt to terminate Judge Gonzalez, Dr. Biggs, and Dr. Rosa was done in violation of the procedural due process required under the U.S. Constitution's Fifth Amendment and the PROMESA.  Any actions by the non-presidential defendants to effectuate President Trump's attempt to terminate Judge Gonzalez, Dr. Biggs, and Dr. Rosa violated those constitutional and statutory rights as well.

### 3.  Defendants' actions find no support in Article II of the Constitution.

With no plausible contention that the purported removals provided the statutorily required cause, the government's sole path to defeating Plaintiffs' claims is to assert that the for-cause removal protection is unconstitutional because it entrenches on the President's inherent Article II authority.  This is the argument the government has recently made in cases involving, for example, the purported termination of members of the Merit Systems Protection Board, the Federal Trade Commission, the National Labor Relations Board, and other independent agencies.  To the extent that the government advances that argument in this case, it would fail for two independent reasons.

*First*, as a threshold matter, the government's argument is wrong: the President does not possess unfettered discretion to fire principal officers.  Instead, under the Supreme Court's landmark decision in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), Congress may enact for-cause removal provisions for multi-member, bipartisan-balanced independent boards. *Id.* at 629-30; *accord Wiener v. United States*, 357 U.S. 349 (1958).  The FOMB is a quintessential example of a multi-member body balanced along partisan lines.  The *Humphrey's Executor* framework remains good law.

In two recent cases, the Supreme Court invalidated removal protections for novel agencies led "by a single individual" that lacked a foothold in history.  *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020); *see Collins v. Yellen*, 594 U.S. 220, 251 (2021).  But the Court reiterated that it did not "revisit *Humphrey's Executor* or any other precedent," and repeatedly contrasted single-director-led agencies with a traditional multimember board or commission.  *Seila Law*, 591 U.S. at 228.

*Second*, the government's Article II arguments would suffer an even more fundamental problem in this case.  Whatever constitutional power the President has to supervise and remove without cause executive-branch "Officers *of the United States*," U.S. Const. art. II, § 2, cl. 2 (emphasis added), that power does not permit the President to override Congress's decision to require that any removal of *territorial* officers, who exercise power only locally within such territories, be for cause.

Those officers' authority rests on an entirely different constitutional footing than Article II; their authority flows from Congress's "Power to dispose of and make all needful Rules and Regulations respecting the Territory . . . belonging to the United States."  *Id.* at art. IV, § 3, cl. 2. Congress has long relied on its Article IV powers (and the Constitution's similar grant of power

to Congress to exercise power over "such District . . . as may . . . become the Seat of Government of the United States," *id.* at art. I, § 8, cl, 17) to "legislate[] for entities that are not States—the District of Columbia and the Territories." *Aurelius Investment, LLC*, 590 U.S. at 460. Acting under Article IV in the PROMESA, Congress gave the FOMB "a structure, a set of duties, and related powers" that make clear that "the Board is part of the local Puerto Rican government." *Id.* at 465. The FOMB, while "possess[ing] considerable power," exercises that "power primarily concern[ing] local matters" in Puerto Rico. *Id.* at 467. In short, whatever the breadth of the President's Article II removal power may be for *federal* officers, it cannot reach territorial officers who exercise authority *locally* under Article IV and for whom Congress has provided for-cause removal protections.

The rationales the government advances in other removal cases do not apply here. The presidential removal power ensures that executive branch officers remain accountable to the President, from whom their authority derives under Article II, which vests "the executive Power" in the President. U.S. Const. art. II, § 1. Those officers "wield executive power *on behalf of the President in the name of the United States*." *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (emphasis added). The power that federal officers exercise thus derives its legitimacy to the public through "a clear and effective chain of command" directly from the President. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010). But FOMB members do not wield federal power on the President's behalf. They wield a power conferred *by Congress* under Article IV to oversee local matters in Puerto Rico.

The logic of the government's apparent position would drastically expand the President's removal power well beyond constitutional bounds. By that logic, the President could ignore Congress's creation of territorial officers and perhaps even fire any territorial officer at any time

16

for any reason—or for no reason at all.  The same logic could lead the President to assert the power to remove any officer exercising local authority over the District of Columbia, *see Palmore v. United States*, 411 U.S. 389, 402-03 (1973) (analogizing Congress's authority over the District of Columbia to its authority over federal territories under Article IV)—potentially even including the D.C. Mayor, *see* Ex. 8 at 26:55-27:05 (https://www.foxnews.com/video/6379207542112) (President stating in an interview on September 12, 2025 that "we have actually more power in DC" and suggesting that "I can change the mayor if I want").

### B.  Plaintiffs Will Suffer Irreparable Harm Absent Relief

Preliminary injunctive relief is also appropriate because Judge Gonzalez, Dr. Biggs, and Dr. Rosa will suffer irreparable harm without it.  Their purported removals deprive them of their roles as presidentially appointed members of the FOMB and mean they cannot perform their statutory duties as members of the FOMB as required by law.  *See Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *7 (D.C. Cir. Sep. 10, 2025) (Pan, J., concurring); *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983).

Multiple recent decisions by district courts in the District of Colombia have reached the same conclusion in removal cases.  *See Dellinger v. Bessent*, 768 F. Supp. 3d 33, 72 (D.D.C. 2025); *Grundmann v. Trump*, 770 F. Supp. 3d 166, 188 (D.D.C. 2025); *LeBlanc v. U.S. Priv. & Civ. Liberties Oversight Bd.*, 784 F. Supp. 3d 1, 39-40 (D.D.C. 2025); *Harris v. Bessent*, 775 F. Supp. 3d 164, 186 (D.D.C. 2025); *Harper v. Bessent*, No. 25-cv-01294, 2025 WL 2049207, at *13 (D.D.C. July 22, 2025); *Aviel v. Gor*, 780 F. Supp. 3d 1, 14 (D.D.C. 2025); *Aviel v. Gor*, No. 25-cv-778, 2025 WL 2374618, at *15 (D.D.C. Aug. 14, 2025); *Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396, at *17 (D.D.C. July 17, 2025); *Abramowitz v. Lake*, No. 25-cv-887, 2025 WL 2480354, at *11 (D.D.C. Aug. 28, 2025) ("Impairing a statutory right to function in a high-ranking

public office is a cognizable harm." (internal quotations and citation omitted)).   The same conclusion is merited here.

By law, Judge Gonzalez, Dr. Biggs, and Dr. Rosa are charged with significant responsibilities overseeing billions of dollars in debt restructuring on behalf of the Commonwealth of Puerto Rico.  They cannot continue to undertake that invaluable work—and risk being replaced in the interim—without immediate injunctive relief confirming that they continue to serve as FOMB members.  In short, as a result of their removal, they have "lost the ability to fulfill a high-ranking, public-servant role to which [they are] entitled." *Aviel v. Gor*, 2025 WL 2374618, at *15.

The Supreme Court's decision in *Sampson v. Murray*, 415 U.S. 61 (1974), is not to the contrary.  There, a terminated probationary federal employee failed to establish irreparable harm beyond economic loss—which could be addressed through the Back Pay Act—and reputational harm, which could be offset by ultimately prevailing on the claim.  *Id.* at 91-92.  But the Supreme Court acknowledged that certain cases may "so far depart from the normal situation that irreparable injury might be found," and that a district court has the authority to grant injunctive relief in "extraordinary situation[s]" such as this one.  *Id.* at 92 n.68.

Discussing *Sampson*, the First Circuit has likewise confirmed that courts should provide equitable relief where—as here—"plaintiffs are not seeking interim injunctive relief pending the completion of an administrative appeals process," "the district court unquestionably ha[s] the authority to issue the requested equitable relief," and "plaintiffs' allegations of irreparable harm go beyond temporary loss of pay or reputational injury[.]"  *Gately v. Commonwealth of Mass.*, 2 F.3d 1221, 1233-34 (1st Cir. 1993); *see also Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023) (confirming that courts can provide injunctive relief to removed officials); *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996) (same).

That describes this case.  Judge Gonzalez, Dr. Biggs, and Dr. Rosa cannot seek administrative relief, this Court has the authority to issue the type of declaratory and injunctive relief that Plaintiffs seek, and Plaintiffs do not seek to redress either economic loss or reputational injury.  Indeed, Plaintiffs receive no compensation for their service as FOMB members.  *See* 48 U.S.C. § 2121(g).  And the preliminary injunction sought here aims not to salve some abstract reputational injury, but instead to ensure that Judge Gonzalez, Dr. Biggs, and Dr. Rosa can continue to carry out the FOMB's critical work restructuring Puerto Rico's debt.  *See* Ex. 2 (Mujica Testimony) at 8-9 (explaining that the FOMB is now working to "execute a comprehensive transformation of Puerto Rico's energy system as defined by Puerto Rico law and the Fiscal Plan for PREPA [the Puerto Rico Electric Power Authority] to establish a more reliable and sustainable energy system").

Finally, history confirms that the law considers the injury Plaintiffs suffered to be irreparable absent judicial intervention.  For hundreds of years Anglo-American courts hearing wrongful removal cases have provided meaningful relief other than money damages to removed officials, such as by issuing writs ordering their reinstatement.  *See Harris*, 775 F. Supp. 3d at 183 (collecting old English cases).  That history confirms that—if the Court does not issue an injunction for any reason—the Court can and should grant the same relief in the form of a writ of mandamus. *See infra* at 21-22.  At the same time, that history underscores that the injury at issue here— wrongful removal in violation of a statute—is the kind of injury that the law views as irreparable absent a meaningful judicial remedy, such as an injunction.

### C.  The Balance of Equities and Public Interest Favor Plaintiffs

The balance of equities and public interest also militate in favor of granting preliminary injunctive relief here.  For one, the public suffers harm whenever the executive branch violates a

statute Congress enacted, the public has a strong interest in the functioning of the FOMB, and the government has no interest in contravening the for-cause removal protection for FOMB members that Congress legislated in the PROMESA. *See Nken*, 556 U.S. at 435-36. A preliminary injunction here would also ensure certainty concerning the FOMB's composition, a certainty that benefits all parties with dealings before or with the FOMB.

In addition, allowing Judge Gonzalez's, Dr. Biggs's, and Dr. Rosa's purported removals to stand would fundamentally alter the balance of power between Congress and the President when it comes to regulation of federal enclaves like territories and the District of Columbia. If the President can wholly ignore congressionally enacted limits on removal for territorial officers passed through Congress's authority to "make all needful Rules and Regulations respecting the Territory . . . belonging to the United States." U.S. Const. art. IV, § 3, cl. 2, the President could replace not only presidential appointees like FOMB members, but even locally elected territorial officers serving local populations. And if the President's power were to reach that far, the President could apply the same logic to argue that he could remove local officers in the District of Columbia, including the D.C. Mayor—notwithstanding Congress's plenary authority over D.C. *See id.* at art. I, § 8, cl. 17. That cannot be right.

The government, for its part, can offer nothing on the other side of the balance. The Executive branch can assert no Article II interest in ensuring that the President have unbounded power to remove non-federal officers who serve local, territorial constituencies such as Puerto Rico. In other words, whatever agenda the President can direct those serving in the Executive branch to implement has no purchase for FOMB members. In addition, the relatively short three-year term for FOMB members, *see* 48 U.S.C. § 2121(e)(5)(A), means that any President who serves a full four-year term will have the opportunity to appoint every FOMB member directly—

further lessening any claim that the President cannot assert any control over an entity for which Congress has supplied him with appointment and (for-cause) removal power.

## II.    In The Alternative, Plaintiffs Are Entitled To Mandamus

If the Court decides that—at the end of these proceedings—it would lack the authority to issue final injunctive relief for any reason, the Court would unquestionably possess authority to issue the same relief in the form of a writ of mandamus. If necessary, the Court could issue the writ immediately or issue the writ after holding an expedited trial on the merits pursuant to Federal Rule of Civil Procedure 65. *See supra* n.1.

There is an exceptionally long history of Anglo-American courts issuing writs of mandamus in precisely this circumstance. *See Harris*, 775 F. Supp. 3d at 183 (collecting old English cases); *see also* 3 William Blackstone, Commentaries 264 (1768) (explaining "mandamus" provides a "full and effectual remedy" in removal cases); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173 (1803) (removed official presented "a plain case for a mandamus"). Under contemporary doctrines, mandamus is appropriate where (1) "the party seeking issuance of the writ [has] no other adequate means to attain" the desired relief; (2) the right to issuance of the writ is "clear and indisputable"; and (3) the issuing court has determined that the writ "is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (cleaned up). If other relief is unavailable for any reason—meaning that the first factor is satisfied—the remaining two factors would be present here as well.

First, for all the reasons given above, Plaintiffs' right to relief is "clear and indisputable." PROMESA without question restricts removal of FOMB members "only for cause," 48 U.S.C. § 2121(e)(5)(B), and only after pre-removal notice and hearing, and the Executive branch failed

to comply with either the substantive or the procedural requirement. *Supra* at 11-14. Any constitutional attack on the statutory removal protection would fail. *Id.* at 14-17.

Second, a writ would be appropriate if no other form of relief is appropriate because otherwise Judge Gonzalez, Dr. Biggs, and Dr. Rosa would have a right—to serve as presidentially appointed FOMB members absent cause for their removal—with no corresponding remedy to vindicate that right. "[I]t goes without saying that federal courts must vigilantly enforce federal law and must not hesitate in awarding necessary relief." *Horne v. Flores*, 557 U.S. 433, 450 (2009).[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs Arthur J. Gonzalez, Andrew G. Biggs, and Dr. Rosa's motion should be granted, and the Court should enter either a preliminary or a permanent injunction. If the Court does not provide injunctive relief, it should issue a writ of mandamus. Plaintiffs also request that the Court expedite the briefing and hearing in this case.

Respectfully submitted,

/s/ David C. Indiano
DAVID C. INDIANO
USDCPR Bar. No. 200601
INDIANO & WILLIAMS
207 Del Parque St
7th Floor
San Juan, Puerto Rico 00912
David.indiano@indianowilliams.com
787-641-4545

---

[3] To facilitate appellate review, Plaintiffs respectfully request the Court note in any permanent injunction that it would alternatively grant mandamus if the option of a permanent injunction were not available for any reason.

/s/ Andrew H. Warren
ANDREW H. WARREN‡
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave SE
Unit 15180
Washington, D.C. 20003
202-594-9958
andrew@democracydefenders.org


/s/ Eduardo E. Santacana
EDUARDO E. SANTACANA*
SIMONA AGNOLUCCI*
ELLIE WINTER BARCZAK*
EVA M. SPITZEN*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
415-693-2531
esantacana@cooley.com
sagnolucci@cooley.com

/s/ James I. Pearce
JAMES I. PEARCE‡†
SAMANTHA BATEMAN*
MARY L. DOHRMANN*††
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org
mdohrmann@washingtonlitigationgroup.org
sbateman@washingtonlitigationgroup.org

‡ Admitted pro hac vice
* Application for pro hac vice forthcoming
† Admitted only in New York and North
Carolina; practicing under the supervision of
D.C. Bar Members
†† Admitted only in New York; practicing
under the supervision of D.C. Bar Members

*Counsel for Plaintiffs Arthur J. Gonzalez, Andrew G. Biggs, and Betty A. Rosa*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 22, 2025, I caused a copy of this document to be served by the notice of electronic filing generated by this Court's electronic case filing system upon all counsel of record in this case.  I also certify that I will serve this document and the associated exhibits and declarations along with the complaint on all Defendants.

<u>/s/ David C. Indiano</u>
DAVID C. INDIANO
USDCPR Bar. No. 200601
INDIANO & WILLIAMS
207 Del Parque St
7th Floor
San Juan, Puerto Rico 00912
David.indiano@indianowilliams.com
787-641-4545