## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| ARTHUR J. GONZALEZ, et al. | |
| *Plaintiffs*, | Case No. 3:25-cv-1508 |
| v. | |
| SERGIO GOR, *et al.*, | |
| *Defendants*. | |

### BRIEF OF *AMICUS CURIAE* JUSTIN PETERSON, FORMER MEMBER OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, IN SUPPORT OF DEFENDANTS SERGIO GOR AND DONALD J. TRUMP

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................. iii

IDENTITY AND INTEREST OF THE *AMICUS CURIAE* ...........................................1

SUMMARY OF THE ARGUMENT ...............................................................................2

ARGUMENT .................................................................................................................3

I.  Strong Presidential Oversight of FOMB Is Critical to Protecting the Island's Interests, Ending Its Debt and Energy Crises, and Returning Power to Its Democratically Elected Leaders .................................................................................................................3

II.  "Cause" in Section 2121 Is Exceedingly Broad ................................................7

   A.  Section 2121 is Open-Ended.........................................................................7

   B.  "Cause" Can Include Policy Disagreements.................................................8

III.  Plaintiffs Have No Property Interests in Their Offices .......................................9

CONCLUSION...............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFPB v. All Am. Check Cashing, Inc.*,
  952 F.3d 591 (5th Cir. 2020) ........................................................................9

*Collins v. Yellen*,
  594 U.S. 220 (2021) ...................................................................................7, 8

*Cook v. Trump*,
  No. 25-5326, 2025 WL 2654786 (D.C. Cir. Sept. 15, 2025) ..................8, 10

*Crenshaw v. United States*,
  134 U.S. 99 (1890) ......................................................................................10

*Morrison v. Olson*,
  487 U.S. 654 (1988) ......................................................................................8

*PHH Corp. v. CFPB*,
  881 F.3d 75 (2018) ........................................................................................9

*Reagan v. United States*,
  182 U.S. 419 (1901) ...............................................................................10, 11

*Reagan v. United States*,
  35 Ct. Cl. 90 (1900) ....................................................................................11

*Shurtleff v. United States*,
  189 U.S. 311 (1903) ....................................................................................11

*Taylor v. Beckham*,
  178 U.S. 548 (1900) ....................................................................................10

*Thornton v. Barnes*,
  890 F.2d 1380 (7th Cir. 1989) ....................................................................10

**Statutes**

12 U.S.C. § 5491 .............................................................................................7

48 U.S.C. § 2121 ........................................................................................7–10

**Other Authorities**

Aditya Bamzai, *Taft, Frankfurter, and the First Presidential For-Cause Removal*,
  52 U. Rich. L. Rev. 691 (2018) ...................................................................11

Andrew G. Biggs & David A. Skeel, Jr., *Trump Is Pulling the Plug on Puerto
  Rico's Economy*, N.Y. Times (Sept. 24, 2025) .................................6, 9, 10

Alexander Gladstone, *McKinsey Clients Won Puerto Rico Contracts as Firm
  Advised Government*, Wall St. J. (June 27, 2022) .......................................5

Andrew Scurria, *Puerto Rico Utility Bondholders Split on Way to Bankruptcy
  Exit*, Wall St. J. (Aug. 24, 2023) .................................................................4

Audrey Streb, *Puerto Rico Ditches Billion-Dollar Climate Lawsuit Following Trump's Blue State Crackdown*, Daily Caller (May 5, 2025), https://dailycaller.com/2025/05/05/puerto-rico-drops-billion-dollar-climate-lawsuit-trump-doj/ .................................................................................................................3

## IDENTITY AND INTEREST OF THE *AMICUS CURIAE*

*Amicus curiae* is Justin Peterson, who served on the Financial Oversight and Management Board of Puerto Rico (FOMB or Board) from 2020 to 2023. He was appointed by President Donald Trump during his first term.

During his time on the FOMB, Mr. Peterson led efforts to successfully restructure more than $33 billion of Commonwealth General Obligation debt after negotiations between the FOMB and bondholders had stalled prior to his appointment. This landmark restructuring would not have happened without Mr. Peterson's leadership. While on the FOMB, Mr. Peterson was also a vocal critic of the FOMB's approach to resolving the bankruptcy of the Puerto Rico Electric Power Authority (PREPA), and of the hundreds of millions being spent by the FOMB on consulting and legal firms. He resigned from the FOMB in August of 2023 in protest over these issues.

As a former FOMB member, Mr. Peterson has unique and direct insights into FOMB leadership's failings and why strong presidential oversight and accountability is sorely needed if the FOMB is to help end Puerto Rico's debt and energy crises—and return control to the Island's democratically elected leaders. President Trump correctly recognized that the FOMB's failure to execute on its mission was an existential threat to the economic well-being of the citizens of Puerto Rico—and that necessarily meant relieving six FOMB members of their duties. Granting Plaintiffs' requests to reinstate them to the Board would be catastrophic to the Island's public interest and would perpetuate the current Board's malfeasance.

## SUMMARY OF THE ARGUMENT

The FOMB was created by Congress in 2016 to oversee the restructuring of Puerto Rico's massive debt and to help institute needed fiscal reforms. After nearly a decade, PREPA still remains mired in bankruptcy, Puerto Rico is still locked out the capital markets, and its citizens are subjected to regular blackouts and power outages. By any objective measure, the FOMB has failed in its mission. But even more disturbing, the willful perpetuation of PREPA's bankruptcy by the previous two Chairmen of the FOMB and by the FOMB's army of consultants and law firms has created a full-blown energy crisis on the island.

The only way to change FOMB's destructive approach was to change its members. Without a meaningful ability to fire FOMB members, the President and the people of Puerto Rico would be stuck with ineffective members whose policies have hurt the Island and its people for nearly a decade. The public interest therefore strongly supports allowing the democratically accountable President to exercise oversight of FOMB, including by removing members, rather than continuing down the same failed path.

The public interest thus strongly favors rejecting Plaintiffs' request to reinstate them and insulate them from presidential and democratic accountability. *See* Part I, *infra*. That alone provides a sufficient basis to deny Plaintiffs' request for emergency relief.

In any event, Plaintiffs' claims are unlikely to succeed on the merits. Even assuming the for-cause removal provision for FOMB members is constitutional, it was satisfied here. Congress used the open-ended term "for cause," without limiting it to behavior in office or specific types of actions, as Congress has done in other for-cause provisions—and thus "cause" here is as broad as could possibly be. *See* Part II.A, *infra*. As other judges have explained, this means "cause" can include ineffective policy decisions, which have become FOMB's calling card. *See* Part II.B, *infra*.

Plaintiffs are also wrong that they have a private property interest in their continued service on a government board. Because they have no property interest in something that belongs to the government, they were not entitled to any process before being removed. *See* Part III, *infra*.

The Court should deny Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

**I.     Strong Presidential Oversight of FOMB Is Critical to Protecting the Island's Interests, Ending Its Debt and Energy Crises, and Returning Power to Its Democratically Elected Leaders.**

The public interest strongly favors rejecting Plaintiffs' attempts to be reinstated to the FOMB. Their leadership has failed to accomplish Congress's objectives, failed to get the Island out of bankruptcy, and failed to ensure Puerto Rico can re-enter the capital markets desperately needed to ensure the Island's economic success.

Americans should be governed by the people they elect. For far too long in Puerto Rico, however, the people have been governed by the unelected FOMB, which was created to facilitate the restructuring of the island's mountain of debt. Instead, FOMB has endlessly delayed Puerto Rico's re-entry into the capital markets that would provide much-needed private investment to improve the island's energy infrastructure. Audrey Streb, *Puerto Rico Ditches Billion-Dollar Climate Lawsuit Following Trump's Blue State Crackdown*, Daily Caller (May 5, 2025), https://dailycaller.com/2025/05/05/puerto-rico-drops-billion-dollar-climate-lawsuit-trump-doj/.

So long as the old FOMB leadership remained in power, the Island would remain in bankruptcy, and there could be no meaningful prospect of investment or restoration of sovereignty to Puerto Rico's elected officials.

But the first signs of oversight and accountability have finally arrived. Recognizing that FOMB's leadership had failed, President Trump fired several members of the FOMB. This is a great step for the Island and the people of Puerto Rico, as new FOMB leadership will finally be

able to end the nearly-decade-long bankruptcy proceedings, and Puerto Rico will once again be an attractive target for private capital.

Removing those Board members was therefore necessary to the success of the Island, and returning them to power would be catastrophic. When it comes to the FOMB's record on energy, the facts speak for themselves. Over the past year, Puerto Rico has been plagued by frequent power outages and island-wide blackouts. Rather than address this unfolding disaster, the FOMB has kept Puerto Rico's power utility, PREPA, mired in bankruptcy and has obstructed efforts to reach a consensual settlement with creditors.

It did not have to be this way. Several years ago, a deal was close that would have ensured payment to bondholders who are collectively owed over $8 billion, who have agreed to over a dozen forbearances, and who have not received debt service payments since 2014. Had the FOMB not walked away from the table, Puerto Rico today would have a professionally managed electrical utility, more reliable and affordable power, and a grid that would be far more resilient to storms.

But the deal fell through because the FOMB once again moved the goal posts with its arbitrary and rigged financial analysis. The FOMB's models have consistently underestimated the amount of money available to pay creditors. *See* Andrew Scurria, *Puerto Rico Utility Bondholders Split on Way to Bankruptcy Exit*, Wall St. J. (Aug. 24, 2023), https://www.wsj.com/articles/puerto-rico-utility-bondholders-split-on-way-to-bankruptcy-exit-f7f9bb24?st=o9t7m6a6zorkb7i.

Revenue bonds, by definition, allow bondholders to a claim on future revenues. The willingness of bondholders to invest in Puerto Rico's electrical utility or that of any municipality or state hinges upon this. By waging an attritive war of litigation against bondholders, the FOMB's leadership has undermined the investability of Puerto Rico and delayed the modernization of

Puerto Rico's electrical grid and power system, a fundamental requirement for economic growth and expansion.

Over the course of its nearly decade-long existence, the FOMB has spent *$2 billion of taxpayer money* on lawyers and consultants who are financially incentivized to perpetuate PREPA's bankruptcy. Throughout his tenure on the FOMB, Mr. Peterson consistently voted against the renewal of many of these contracts and was a vocal critic of the FOMB's profligacy. *See* Alexander Gladstone, *McKinsey Clients Won Puerto Rico Contracts as Firm Advised Government*, Wall St. J. (June 27, 2022), https://www.wsj.com/articles/mckinsey-clients-won-puerto-rico-contracts-as-firm-advised-government-11656334801.

The old FOMB leadership proved that in life, there are actually three certainties: death, taxes, and the FOMB's never-ending, billable-hour-churning bacchanal. Even now, with most of the FOMB rightfully terminated from their positions, the litigation *still continues*—this case proves it.

New FOMB leadership focused on dealmaking is badly needed. As a former dealmaking member of the FOMB who was appointed by President Trump in his first Administration, *amicus* has applauded the President's actions to rescue Puerto Rico from a Board that has presided over the disintegration of the island's electrical grid and that has failed in its most basic duties to the people of Puerto Rico. Following the devastation caused by hurricane Maria in 2017, the Trump Administration swung into action. The response was swift, historic and unrelenting, continuing all the way through his first term. The Biden Administration and the FOMB's leadership wasted four years spent mainly on promoting green energy boondoggles. And the billions of dollars authorized by President Trump in his first Administration to rebuild Puerto Rico's electrical grid after

5

hurricane Maria remain unspent due the FOMB's failure to work with the local government and the Biden Administration's insistence on green energy.

President Trump's plan for U.S. energy dominance is exactly what Puerto Rico needs. But it can never be achieved when the FOMB is packed with those whose ideas have already failed and who have an incentive to keep PREPA in bankruptcy, to the detriment of the Island and its democratically elected political leaders.

New FOMB leadership could quickly take steps to make Puerto Rico great again. *First*, it could end PREPA's bankruptcy, which can be done swiftly by reaching a consensual deal with creditors who have reached numerous agreements in the past, only to have the FOMB walk away from the negotiating table. A restructuring that treats all parties fairly and does not place an undue burden on ratepayers would be easily attainable with a new, deal-focused FOMB.

*Second*, new FOMB leadership could help privatize and rebuild Puerto Rico's electrical grid. It can be powered by American natural gas and safe, small modular reactors (SMRs), rather than by green hype or solar panels that will be blown away in the next hurricane. The President's Energy Dominance Council and the Department of Energy should lead this process, working with the reconstituted FOMB.

*Third*, the FOMB should be dissolved following a successful restructuring of PREPA, which is the only restructuring left to complete. Congress never intended the FOMB to be permanent, and billions of taxpayer funds are being wasted. Puerto Rico should be governed by its elected leaders. In a recent New York Times op-ed, two former members of the FOMB characterized the President's removal of FOMB members as an "echo" of past colonialism. Andrew G. Biggs & David A. Skeel, Jr., *Trump Is Pulling the Plug on Puerto Rico's Economy*, N.Y. Times (Sept. 24, 2025), https://www.nytimes.com/2025/09/24/opinion/puerto-rico-

bankruptcy-debt.html. In fact, the FOMB itself—going on nearly a decade with no end in sight—has become a colonial imposition on Puerto Rico. Therefore, removal of the six board members and appointing new ones who will quickly finish the job, terminate the FOMB, and restore power to Puerto Rico's elected leaders would uphold the principles of self-rule established by our nation's founders.

In short, the FOMB desperately needs accountability and new leadership, and removal and replacement of FOMB members is the only way that the President can exercise the oversight necessary to achieve Congress's vision of Puerto Rico re-entering the capital markets.

The FOMB's former leadership failed to understand this, and now thankfully they are gone. Letting them back in would be catastrophic to the Island's public interest, economy, and sovereignty. That alone provides a sufficient basis for the Court to deny Plaintiffs' request for emergency relief.

## II.    "Cause" in Section 2121 Is Exceedingly Broad.

In addition to failing the public-interest prong, Plaintiffs are unlikely to prevail on the merits of their claims. By statute, the President can remove FOMB members only "for cause." 48 U.S.C. § 2121(e)(5)(B). Even assuming that provision is constitutional, it was satisfied here.

### A.    Section 2121 Is Open-Ended.

Unlike other statutory for-cause provisions, § 2121 does not limit "cause" in any way. It is not constrained to actions or consequences while "in office." *E.g.*, 12 U.S.C. § 5491(c)(3) (CFPB Director). Nor does it define "cause" to mean only inefficiency, neglect of duty, or malfeasance (so-called "INM factors"). This "give[s] the President more removal authority than other removal provisions" imposed by Congress or reviewed by the Supreme Court. *Collins v. Yellen*, 594 U.S. 220, 255–56 (2021). It affords the President broader authority than a "good cause" requirement,

*see id.*, which itself leaves the President with "ample authority" to remove an official who performs his statutory responsibilities incompetently, *Morrison v. Olson*, 487 U.S. 654, 692 (1988). And it certainly is broader than the so-called INM factors. *See Collins*, 594 U.S. at 255–56; *Cook v. Trump*, No. 25-5326, 2025 WL 2654786, at *7 (D.C. Cir. Sept. 15, 2025) (Katsas, J., dissenting) (summarizing these cases).

Taken together, this means the for-cause provision in § 2121 is as broad as could be imagined.

**B.     "Cause" Can Include Policy Disagreements.**

As Plaintiffs admit, Congress did not elsewhere define "cause" in the relevant statutory provisions. Dkt. No. 8 at 11. They contend, however, that cause cannot include policy disagreements, citing a D.C. District Court decision that in turn relied on *Humphrey's Executor*. Dkt. No. 8 at 12 & n.2. That is incorrect for several reasons. The best reading is that "cause" can include policy disagreements, especially where—as here—they lead to poor performance and inefficiency by the FOMB.

*First*, as noted above, § 2121 does not include so-called "INM" language, which it makes it unlike the clause in *Humphrey's Executor*. So even if *Humphrey's Executor* did hold that policy disagreements cannot amount to INM, that says nothing about whether such disagreements would amount to "cause" under § 2121.

*Second*, as Judge Griffith of the D.C. Circuit has explained, *Humphrey's Executor* did *not* hold that policy disagreements cannot amount to INM. *Humphrey's Executor* "nowhere addressed the extent to which the INM standard insulated Humphrey. When the Court determined that President Roosevelt failed to comply with the INM standard, it was not because he removed Humphrey for any specific policy the Commissioner had pursued. Instead, the President failed to

comply with the INM standard because he expressly chose to remove Humphrey *for no cause at all*." *PHH Corp. v. CFPB*, 881 F.3d 75, 128 (2018) (Griffith, J., concurring in the judgment) (emphasis in original).

Rather, as Judge Griffith explained, policy disagreements assuredly can amount to "inefficiency," which "is the broadest of the three INM removal grounds." *Id.* at 131–32. Dictionary definitions, historical evidence, and contemporary usage all demonstrated that "an officer is 'inefficient' when he fails to produce or accomplish some end." *Id.* at 134. For example, in the context of the Comptroller, "the breadth of the 'inefficiency' ground permitted Congress to remove him for failing to perform his duties in the manner Congress wanted." *Id.* at 133.

Surveying this extensive record, Judge Griffith concluded that "an officer is inefficient when he fails to produce or accomplish the agency's ends, as understood or dictated by the President operating within the parameters set by Congress." *Id.* at 134. Other judges across the ideological spectrum have agreed that this is a reasonable interpretation of "inefficiency" and that it also comports with "avoidance" principles. *CFPB v. All Am. Check Cashing, Inc.*, 952 F.3d 591, 602 (5th Cir. 2020) (Higginbotham, J., joined by Higginson, J., concurring).

Thus, even if § 2121 adopted some variation of INM (it doesn't), the President is still authorized to terminate Plaintiffs for policy disagreements, especially when they lead to inefficiency and poor outcomes, which have been the FOMB's calling cards for years.

## III.    Plaintiffs Have No Property Interest in Their Offices.

Plaintiffs also contend they were deprived of their offices without due process and that, at the very least, the President must "articulate[]" a "basis" for cause. Dkt. No. 8 at 12 n.2. But one of the Plaintiffs recently penned an op-ed in the New York Times stating that "[t]he White House … cited the board's supposed inefficiency as a reason for the purge." Andrew G. Biggs & David

A. Skeel, Jr., *Trump Is Pulling the Plug on Puerto Rico's Economy*, N.Y. Times (Sept. 24, 2025), https://www.nytimes.com/2025/09/24/opinion/puerto-rico-bankruptcy-debt.html.

In any event, Plaintiffs were not entitled to any notice or process before removal. Section 2121 does not provide for any sort of notice or hearing before removal. Plaintiffs therefore must assert a constitutional right to process, but that would require identifying a cognizable property interest in their offices themselves.

In a famous triad of cases decided in the days when open-ended removal protections were more common, the Supreme Court repeatedly rejected assertions of a due process interest in government offices. In the first case, the Court rejected the claim that a tenure-protected naval officer "ha[s] any vested interest or contract right in his office." *Crenshaw v. United States*, 134 U.S. 99, 104 (1890). In fact, the Court had "little difficulty in deciding that there was no such interest or right" because an "appointment" to an office is "public," not "private" or "personal." *Id.* at 104–05. The Supreme Court held the same in *Taylor v. Beckham*, 178 U.S. 548 (1900), which rejected a claim that a gubernatorial candidate had a due process property interest in his office, *id.* at 576–77. "[P]ublic office is not property." *Id.* And in *Reagan v. United States*, 182 U.S. 419 (1901), the Supreme Court likewise held that "no notice of any charge" and "no hearing" were required to remove an officer with for-cause removal protection, *id.* at 424.

Surveying this caselaw, Judge Katsas of the D.C. Circuit recently concluded that "public offices are mere agencies or trusts, and not property as such." *Cook*, 2025 WL 2654786, at *8 (Katsas, J., dissenting) (quoting *Taylor*, 178 U.S. at 577). As Judge Easterbrook rhetorically put it: "What, particularly, is the 'property' in a public job? Is it the emoluments of the office, the official power of the office, or the honor of it all?" *Thornton v. Barnes*, 890 F.2d 1380, 1392 (7th Cir. 1989) (Easterbrook, J., concurring).

10

To be sure, when the permissible causes of removal are "named in the statute," the Court has suggested that a "removal for any of those causes can only be made after notice and an opportunity to defend." *Shurtleff v. United States*, 189 U.S. 311, 317 (1903); *see* Aditya Bamzai, *Taft, Frankfurter, and the First Presidential For-Cause Removal*, 52 U. Rich. L. Rev. 691, 729–37 (2018). But where a removal provision requires cause without listing specific causes—as here—removal can occur with "no notice of any charge against [the officer], and no hearing." *Reagan*, 182 U.S. at 424.

Also, a fired individual could possibly contend he has a private property interest in receiving his salary—as Humphrey did in *Humphrey's Executor*—rather than continued occupation of the office itself. *See also Reagan v. United States*, 35 Ct. Cl. 90, 105–06 (1900). But Plaintiffs acknowledge they are not paid and thus have no financial interest in their offices. Dkt. No. 8 at 7. Even if they did, their suit would belong exclusively in the Court of Federal Claims, not the U.S. District Court.

## CONCLUSION

The Court should deny Plaintiffs' motion for emergency relief.

September 26, 2025                    Respectfully submitted,

PUERTO RICO LEGAL ADVISERS, LLC
PO BOX 19586
SAN JUAN, P.R. 00910
TEL.: 787-625-3300
info@prlegaladvisers.com

s/RAMON L. ROSARIO-CORTÉS
RAMON L. ROSARIO-CORTÉS USDC-
PR No. 303610
Email: rosario@prlegaladvisers.com

R. TRENT MCCOTTER (*pro hac vice*
forthcoming)
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

DANIEL Z. EPSTEIN (*pro hac vice*
forthcoming)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003

*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that on this date, the foregoing was filed electronically with the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Respectfully submitted,

s/Ramon L. Rosario-Cortés

RAMON L. ROSARIO-CORTÉS