**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ARTHUR GONZALEZ, *et al.*,

    *Plaintiffs*,

v.

SERGIO GOR, *et al.*,

    *Defendants*.

Case No. 25-CV-1508-MAJ

**UNITED STATES DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

LEGAL BACKGROUND ............................................................................................................... 2

FACTUAL BACKGROUND .......................................................................................................... 3

LEGAL STANDARD ..................................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

    I.      Plaintiffs Were Removed For Cause. ................................................................................. 5

    II.     Plaintiffs' Procedural Challenge Fails. .............................................................................. 7

    III.    Plaintiffs Cannot Obtain an Injunction Reinstating Them. .............................................. 10

    IV.    Plaintiffs Cannot Show Irreparable Harm or That The Balance of the Equities and Public Interest Favor Injunctive Relief. ....................................................................................... 12

    V.     Plaintiffs Cannot Demonstrate Entitlement to Mandamus Relief. ................................... 16

    VI.    If the Court Issues Injunctive Relief, A Bond Is Required. ............................................. 17

CONCLUSION ............................................................................................................................. 17

**INTRODUCTION**

Last month, President Trump terminated members of the Puerto Rico Financial Oversight and Management Board for their inefficiency, ineffectiveness, neglect, and failure. The President found that the Board's members fell short in responding to Puerto Rico's fiscal crisis. Years after Congress created the Board, Puerto Rico's instrumentalities remain mired in bankruptcy proceedings. In addition, the President concluded that Plaintiffs overspent and mismanaged. Under Plaintiffs' supervision, unnecessary sums were paid out to law firms, advertisers, and consultants. All of this justified the President's decision to remove Plaintiffs from the Board. And that decision was consistent with federal law. Congress expressly gave the President the power to remove Board members for cause, which he did. President Trump's decision is also judicially unreviewable.

In addition to challenging their for-cause removal, Plaintiffs claim they were denied rights to procedural due process. But they fail to establish any entitlement to such rights. The Due Process Clause applies to deprivations of life, liberty, and property. Plaintiffs lack a life, liberty, or property interest in their service on the Board. They have no property interest in remaining on the Board, which pays them no salary for their work. Nor does the Puerto Rico Oversight, Management, and Economic Stability Act provide such a right.

Even if Plaintiffs could identify a legal defect in their removal, they would not be entitled to an injunction for multiple reasons. *First*, nothing permits injunctive relief in the form of reinstatement. That remedy is inconsistent with traditional principles of equity jurisprudence, and Congress has not authorized it. *Second*, Plaintiffs cannot make the required showing of irreparable harm. Unlike other litigation challenging removals by the President, Plaintiffs delayed for *weeks* in bringing suit. That fact belies their request for emergency relief. And in any event, their

removal from the board does not inflict irreparable harm. *Third*, the balance of the equities and public interest disfavor an injunction. Congress made the President responsible for determining whether cause exists to remove a member of the Board, and he determined that cause exists. Plaintiffs' reinstatement would place on the Board three individuals who the President concluded failed in their duties and engaged in mismanagement. This Court should deny Plaintiffs' motion for a preliminary injunction.

## LEGAL BACKGROUND

Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 ("PROMESA"), 48 U.S.C. § 2101 *et seq.*, "to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a). Congress found that "[a] combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing ha[d] created a fiscal emergency in Puerto Rico." 48 U.S.C. § 2194(m)(l). Because of that "fiscal emergency," Congress concluded that "the Government of Puerto Rico has been unable to provide its citizens with effective services." 48 U.S.C. § 2194(m)(2).

PROMESA created the Financial Oversight and Management Board for Puerto Rico to "offer[] a path out of the crisis." *Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 342 (2023). The Board consists of "seven members appointed by the President." 48 U.S.C. § 2121(e)(1)(A). In addition, "[t]he Governor, or the Governor's designee, shall be an ex officio member . . . without voting rights." *Id.* § 2121(e)(3). "The President may remove any member of the Oversight Board only for cause." *Id.* § 2121(e)(5)(B). Service on the Board is unpaid. *Id.* § 2121(g).

**FACTUAL BACKGROUND**

President Trump removed Plaintiffs Arthur J. Gonzalez and Betty A. Rosa from the Board on August 1, 2025. *See* Decl. of Arthur J. Gonzalez (ECF No. 8-10) ¶ 6; Decl. of Betty A. Rosa (ECF No. 8-11) ¶ 7. Plaintiff Andrew G. Biggs was removed on August 13, 2025. *See* Decl. of Andrew Biggs (ECF No. 8-9) ¶ 7. Days after Judge Gonzalez and Dr. Rosa were removed, a White House official explained that the Board had been "run inefficiently and ineffectively by its governing members for far too long, and it's time to restore common sense leadership." *See, e.g.*, *Trump fires 5 members of Puerto Rico's financial oversight board*, CBS News (Aug. 5, 2025), https://www.cbsnews.com/news/trump-fires-5-members-of-puerto-ricos-financial-oversight-board/. Dr. Biggs recently acknowledged that the White House relied on "inefficiency as a reason" for his and the other plaintiffs' removals. Andrew G. Biggs & David A. Skeel Jr., *Trump is pulling the plug on Puerto Rico's economy*, N.Y. Times (Sept. 24, 2025), https://www.nytimes.com/2025/09/24/opinion/puerto-rico-bankruptcy-debt.html.

Although "White House statements . . . made clear that [Plaintiffs] were removed for cause based on . . . inefficiency, ineffectiveness, neglect, and failure to advance the statutory mission of the Oversight Board," the Deputy Director of Presidential Personnel transmitted letters to Plaintiffs on September 26, 2025, that "further clarif[ied] the grounds for . . . removal." ECF No. 57-1. "The President has determined that cause exists (and existed on [the dates Plaintiffs were removed]) to remove [Plaintiffs] from office as . . . member[s] of the Oversight Board, because, in the President's judgment, [Plaintiffs'] tenure has failed in advancing the Oversight Board's statutory mission." *Id.* During Plaintiffs' service, "the Oversight Board has not found a way out of Puerto Rico's fiscal crisis, and has not made any meaningful progress to resolv[e] it." *Id.* "Puerto Rico's instrumentalities remain mired in bankruptcy proceedings." *Id.* The letters also explained the

President's consideration of a former Oversight Board member's statement that the Board's failure to resolve the Puerto Rico Electric Power Authority's bankruptcy is "disgraceful and harmful." *Id.*

The letters also described Plaintiffs' mismanagement of the Board. Bodies under Plaintiffs' supervision "have lavished funds on law firms, advertisers, and consultants." *Id.* "For example, the Oversight Board has spent roughly $2 billion in professional 'advising' fees in bankruptcy proceedings with little to show for it, while the Oversight Board reportedly managed to sink over $250 million in consultant and law-firm fees into [the Electric Power Authority]'s bankruptcy proceedings." *Id.* For these reasons, "[t]he President . . . determined that there is sufficient cause to remove [Plaintiffs] from [their] position[s]." *Id.* "If nothing else, the public nature of Puerto Rico's struggles during [Plaintiffs'] tenure means that the President, Puerto Rico residents, and U.S. taxpayers cannot have confidence in [Plaintiffs'] ability to effectively lead the Oversight Board or manage the finances of Puerto Rico free of mismanagement, neglect, and inefficiency." *Id.*

More than six weeks after Judge Gonzalez's and Dr. Rosa's removal, on September 18, 2025, Plaintiffs filed suit to challenge their removals. ECF No. 1. Plaintiffs moved for a preliminary injunction four days later but did not move for a temporary restraining order. ECF No. 8. On September 25, this Court set a hearing "to address whether the issuance of a Temporary Restraining Order is warranted." ECF No. 29.

## LEGAL STANDARD

Temporary restraining orders and preliminary injunctions are "extraordinary and drastic remed[ies] that [are] never awarded as of right." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)) (citation modified). Plaintiffs seeking such relief must make "a clear showing" that:

(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent the preliminary relief; (3) the balance of equities tips in their favor, and (4) an injunction favors the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). A court can "begin[] and end[]" its analysis when a plaintiff fails to demonstrate irreparable harm. *State v. Musk*, 769 F. Supp. 3d 1, 5 (D.D.C. 2025); *see also, e.g.*, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors . . . merit such relief.").

## ARGUMENT

**I.     Plaintiffs Were Removed For Cause.**

Plaintiffs cannot prevail on their substantive challenge to their removals because they were removed for cause. "The President may remove any member of the Oversight Board only for cause." 48 U.S.C. § 2121(e)(5)(B). As letters transmitted to Plaintiffs explain, "[t]he President . . . determined that cause exists . . . to remove [Plaintiffs] from office as . . . member[s] of the Oversight Board." ECF No. 57-1. "Under [Plaintiffs'] so-called leadership, the Oversight Board has not found a way out of Puerto Rico's fiscal crisis, and has not made any meaningful progress to resolv[e] it." *Id.* As noted in the factual background, the President also cited Plaintiffs' mismanagement of the bodies under their supervision. *Id.* He specifically identified Plaintiffs' runaway spending on law firms, advertisers, and consultants. *Id.* An amicus brief submitted by former Board member Justin Peterson likewise describes Plaintiffs' the Board's failures and its inappropriate spending. ECF No. 52-1 at 1-7.

Plaintiffs' filing from yesterday questions the correctness of these judgments. *See* ECF No. 57. But President Trump's conclusion that cause existed for Plaintiffs' removal is judicially

unreviewable. PROMESA's "for cause" language makes the President solely responsible for determining whether cause exists. 48 U.S.C. § 2121(e)(5)(B). Congress has enacted different types of removal provisions for different federal agencies. Most provisions state that the President may remove public officials only for enumerated causes—typically, "inefficiency, neglect of duty, or malfeasance in office."[1] But some, like PROMESA, allow the President to remove public officials for "cause" without specifying the causes that suffice.[2]

Binding Supreme Court precedent recognizes the unreviewability of such determinations. In *Reagan v. United States*, 182 U.S. 419 (1901), the relevant statute authorized removal of certain inferior officers for "causes prescribed by law" but did not specify the causes that would justify removal. *Id.* at 424. The Supreme Court held that "removal for cause, when causes are not defined," "is a matter of discretion and not reviewable." *Id.* at 425. The Court of Claims in that case—which the Supreme Court affirmed—similarly explained that "[w]here the statute gives a power of removal 'for cause,' without any specification of the causes, this power is of a discretionary" nature, and "the exercise thereof can not be reviewed." *Reagan v. United States*, 35 Ct. Cl. 90, 105 (1900). The same reasoning applies here, as § 2121(e)(5)(B) explicitly gives the President discretion to remove Board members if he determines that cause exists, as he did here. This Court, accordingly, cannot review his decision that cause existed for Plaintiffs' termination.

---

[1] *See, e.g.*, 5 U.S.C. § 1202(d) (Merit Systems Protection Board) ("inefficiency, neglect of duty, or malfeasance in office"); 15 U.S.C. § 41 (Federal Trade Commission) ("inefficiency, neglect of duty, or malfeasance in office"); 22 U.S.C. § 4605(f) (United States Institute of Peace) ("conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties"); 29 U.S.C. § 153(a) (National Labor Relations Board) ("neglect of duty or malfeasance in office").
[2] *See, e.g.*, 39 U.S.C. § 202(a)(1) (Board of Governors of the U.S. Postal Service); 39 U.S.C. § 502(a) (Postal Regulatory Commission).

## II. Plaintiffs' Procedural Challenge Fails.

Plaintiffs also argue that they were deprived of procedural due process rights under both the Fifth Amendment's Due Process Clause and the PROMESA. ECF No. 8 at 12. But neither affords Plaintiffs any such right.

*First*, Plaintiffs cannot demonstrate that the Fifth Amendment affords them a right to notice and a hearing. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Under that Clause, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted). The first step requires examining whether the plaintiff has an interest in the Due Process Clause's "protection of liberty and property" "to determine whether due process requirements apply in the first place." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972). Only "[i]f the plaintiff has been deprived of a protected interest" must the Court proceed to the next step. *Ralls Corp. v. Committee on Foreign Inv.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Here, Plaintiffs fail at step one: "[P]ublic office is not property." *Taylor v. Beckham*, 178 U.S. 548, 576 (1900). Over a century ago, the Supreme Court held it had "little difficulty in deciding that there was no such interest or right" in a person's public office. *Crenshaw* v. *United States*, 134 U.S. 99, 104 (1890). That is especially true where, as here, the position is unpaid, 48 U.S.C. § 2121(g), and Plaintiffs each held separate employment while serving on the Board.[3]

---

[3] *See* Decl. of Andrew Biggs (ECF No. 8-9) ¶ 1 (Dr. Biggs is employed by the American Enterprise Institute and the Stanford Institute for Economic Policy Research); Decl. of Arthur J. Gonzalez

Plaintiffs' claims of a due process right to a hearing thus are wholly unlike those of the public employees (a security guard and a bus mechanic) who were removed from their positions in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). There, the Supreme Court held that the public employees had "a property right in continued employment" because state law granted them such a property right. *Id.* at 538-39. The same goes for *Eaton v. Town of Townsend*, No. 22-1334, 2023 WL 3317986 (1st Cir. May 9, 2023) (unpublished)—a nonprecedential opinion that Plaintiffs also cite. *See* ECF No. 8 at 13. That case related to the termination of a chief of police whose property interest in his employment was "undisputed." *Eaton*, 2023 WL 3317986 at *8.

Simply put, a "public office is not property." *Taylor*, 178 U.S. at 576. That conclusion is even clearer where those holding such public office receive no salary that could be characterized as a property interest. Because the Due Process Clause by its terms requires a "depriv[ation] of life, liberty, or property," and Plaintiffs lack a property interest, their Fifth Amendment claim fails.

*Second*, and similarly, PROMESA does not provide Plaintiffs with any statutory right to notice and a hearing. The statute authorizes the President to remove Board members "for cause," without mentioning notice or a hearing. *See* 48 U.S.C. § 2121(e)(5)(B). Ordinarily, courts should "resist reading words or elements into a statute that do not appear on its face." *Bates* v. *United States*, 522 U.S. 23, 29 (1997). That is especially true of removal restrictions, which require "very clear and explicit language," not mere "inference or implication." *Kennedy* v. *Braidwood Management, Inc.*, 145 S. Ct. 2427, 2448 (2025).

---

(ECF No. 8-10) ¶ 1 (Judge Gonzalez is employed by the New York University School of Law); Decl. of Betty A. Rosa (ECF No. 8-11) ¶ 1 (Dr. Rosa is the Commissioner of Education and President of the University of the State of New York),

Thus, when Congress intends to impose procedural constraints on removal, it says so. Congress has adopted express notice-and-hearing requirements for removing certain principal officers who serve as members of boards, such as for the National Labor Relations Board, 29 U.S.C. § 153(a), and the Federal Labor Relations Authority, 5 U.S.C. § 7104(b). It has provided express provisions for inferior officers as well, such as administrative law judges. *See* 5 U.S.C. § 7521(a). "Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske* v. *Klemm*, 589 U.S. 8, 14 (2019).

Plaintiffs rely on *Reagan* and *Shurtleff v. United States*, 189 U.S. 311 (1903), but those decisions distinguish between statutes that specify causes for removal (such as inefficiency, neglect of duty, and malfeasance in office) and statutes that authorize removal for cause *without* specifying what cause requires. *Shurtleff* explained that, when causes are "named in the statute," a removal "can only be made after notice and an opportunity to defend." 189 U.S. at 317; *see* Aditya Bamzai, *Taft, Frankfurter, and the First Presidential For-Cause Removal*, 52 U. Rich. L. Rev. 691, 723 (2018) (notice and a hearing required only when the President invokes "enumerated grounds"). *Reagan* similarly stated that "notice and hearing are essential" "where causes of removal are specified," then upheld the removal of an officer who was "given no notice of any charge against him, and no hearing," because the statute at issue required cause without listing specific causes. 182 U.S. at 424-25. It is of no moment that Plaintiffs had fixed terms because a term simply sets "a ceiling, not a floor, on the length of service." *Severino v. Biden*, 71 F.4th 1038, 1045 (D.C. Cir. 2023). Plaintiffs thus fail to show that procedural due process rights were violated through their removals.

### III. Plaintiffs Cannot Obtain an Injunction Reinstating Them.

Even if Plaintiffs could establish a legal defect in their terminations, they could not obtain an injunction reinstating them to their roles. That proposed remedy is inconsistent with historical equitable remedies. And the Court lacks jurisdiction to enter an injunction or any other remedy against the President of the United States.

1. Federal courts derive their equitable powers from the Judiciary Act of 1789, ch. 20, 1 Stat. 73. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025); *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). They must exercise those powers in accordance with "traditional principles of equity jurisdiction," *Grupo*, 527 U.S. at 319, as understood "at the time of the adoption of the Constitution and the enactment of the original Judiciary Act," *CASA*, 606 U.S. at 841-842 (quoting *Grupo*, 527 U.S. at 318-19). Federal courts may not "devise novel remedies that have no background in traditional equitable practice." *Id.* at 846 n.9.

It is well established that a court may not enjoin the removal of an official. The Supreme Court has repeatedly recognized this principle, saying that "the general rule, both in England and in this country, is that courts of equity have no jurisdiction, unless expressly granted by statute, . . . over the appointment and removal of public officers," *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898), and that a "traditional limit upon equity jurisdiction" precludes "federal equity from staying removal of a federal officer." *Baker v. Carr*, 369 U.S. 186, 231 (1962) (emphasis omitted); *see also, e.g.*, *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."). That principle

is true for the removal of federal officers, *see White*, 171 U.S. at 376-378, and state officers, *see, e.g.*, *In re Sawyer*, 124 U.S. 200, 221 (1888). There is no good reason to treat territorial officers any differently.

Because reinstatement is not a traditional equitable remedy, Congress affirmatively authorizes reinstatement when it means to make that relief available. For example, the statute in *Morrison v. Olson*, 487 U.S. 654 (1988), provided that a removed independent counsel "may be reinstated" by a reviewing court. Independent Counsel Reauthorization Act of 1987, § 2, 101 Stat. 1305. Congress likewise has authorized "reinstatement" as a remedy for employment discrimination, *see* 42 U.S.C. 2000e-5(g)(1), and unfair labor practices, *see* 29 U.S.C. 160(c). But Congress did not authorize such relief in PROMESA, and that omission is decisive. The "remedies available are those 'that Congress enacted into law,'" not those that courts consider "desirable." *Alexander v. Sandoval*, 532 U.S. 275, 286-287 (2001) (citation omitted). This Court lacks authority to enter a reinstatement remedy that Congress has not permitted.

2. Moreover, the Court does not have power to grant injunctive or declaratory relief against the President, and Plaintiffs' proposed order correctly does not seek those remedies against him. ECF No. 8-12. "[C]ourts do not have jurisdiction to enjoin [the President] . . . and have never submitted the President to declaratory relief." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (citations omitted); *see Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) ("[I]n general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" (citation omitted)); *id.* at 827 (Scalia, J., concurring in part) ("[W]e cannot issue a declaratory judgment against the President."); *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866). Accordingly, the Court lacks jurisdiction to enter Plaintiffs' requested relief against the President.

### IV.  Plaintiffs Cannot Show Irreparable Harm or That The Balance of the Equities and Public Interest Favor Injunctive Relief.

This Court should also deny injunctive relief because Plaintiffs cannot establish that they are likely to suffer imminent, irreparable harm absent an injunction or that the balance of the equities and public interest favors them.

1.  The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22.  Plaintiffs have not demonstrated that they are likely to suffer irreparable harm absent an injunction, which is reason alone to deny Plaintiffs' motion.  The Supreme Court has specifically held that a temporary restraining order and other sorts of preliminary relief are generally unavailable for cases involving removals and are reserved only for "genuinely extraordinary situation[s]" that "so far depart from the normal situation that irreparable injury might be found."  *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).  Not even loss of income or damage to reputational harm suffice to demonstrate irreparable harm.  *Id.* at 91-92.

Plaintiffs have not demonstrated that this is a "genuinely extraordinary situation" requiring the Court to issue an injunction.  All three Plaintiffs acknowledge that they were removed from office over five weeks ago,[4] and none will lose any pay while not on the Board, *see* 48 U.S.C. § 2121(g); ECF No. 8 at 19 (acknowledging "Plaintiffs receive no compensation for their service as [Board] members").  The fact that all were removed already brings this case out of the realm of *Gately v. Commonwealth of Massachusetts*, 2 F.3d 1221 (1st Cir. 1993), because those plaintiffs had not yet been discharged and were facing the possibility of losing their employment.  *See id.* at

---

[4] *See* Decl. of Andrew Biggs (ECF No. 8-9) ¶ 7 (acknowledging Dr. Biggs received an email terminating his Board position on August 13, 2025); Decl. of Arthur J. Gonzalez (ECF No. 8-10) ¶ 6 (same for Judge Gonzalez on August 1, 2025); Decl. of Betty A. Rosa (ECF No. 8-11) ¶ 7 (same for Dr. Rosa on August 1, 2025).

1224, 1234 (explaining that plaintiffs brought their case before their discharge while arguing that their rights "w[ould] be violated in the event of their discharge"). They have also not shown any harm personal to them at all, whether by possible loss of wages or some sort of stigma from the loss of their positions. *Cf. Roe v. Shanahan*, 359 F. Supp. 3d 382, 419 (E.D. Va. 2019) (finding an extraordinary situation where a class of servicemembers faced possible discharge due to their HIV-positive status because they faced a likelihood of stigmatic injury based on "widespread fear, hostility, and misinformation"), *aff'd sub nom. Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020), *as amended* (Jan. 14, 2020). Plaintiffs thus face no harm at all absent an injunction.

Plaintiffs assert only one basis for their perceived irreparable injury: That "they cannot perform their statutory duties as members of the [Board] as required by law." ECF No. 8 at 17. They argue that a preliminary injunction is meant to "ensure that [Plaintiffs] can continue to carry out the [Board's] critical work restructuring Puerto Rico's debt." *Id.* at 19. But that type of alleged harm has repeatedly been held to not constitute irreparable injury by courts of appeals. Plaintiffs rely primarily on trial court opinions from the U.S. District Court for the District of Columbia, *see* ECF No. 8 at 17-18, but they fail to acknowledge that higher courts—the U.S. Court of Appeals for the D.C. Circuit and the U.S. Supreme Court—have repeatedly rejected those district courts' reasoning. For example, in *Dellinger v. Bessent*, 768 F. Supp. 3d 33 (D.D.C. 2025), *vacated and remanded,* No. 25-5052, 2025 WL 935211 (D.C. Cir. Mar. 27, 2025), the district court issued a preliminary injunction because the plaintiff would be irreparably harmed by being "render[ed] [] unable to fulfill" his statutory duties. *Id.* at 72. On appeal, the D.C. Circuit held that even if the discharged special counsel's "removal [wa]s ultra vires," a deprivation of his "statutory right to function in office" was not irreparable. *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025). "At worst, [the discharged special counsel] would remain

out of office for a short period of time," whereas "the potential injury to the government of both having its designated Acting Special Counsel sidelined and unable to act while also having to try and unravel [the discharged Special Counsel's] actions is substantial."  *Id*. at *4.

Similarly, among other citations, Plaintiffs cite *Grundmann v. Trump*, 770 F. Supp. 3d 166, 188 (D.D.C. 2025); *LeBlanc v. U.S. Priv. & Civ. Liberties Oversight Bd.*, 784 F. Supp. 3d 1, 39-40 (D.D.C. 2025); *Harris v. Bessent*, 775 F. Supp. 3d 164, 186 (D.D.C. 2025); *Harper v. Bessent*, No. 25-cv-01294, 2025 WL 2049207, at *13 (D.D.C. July 22, 2025); and *Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396, at *17 (D.D.C. July 17, 2025).  All these orders were also stayed by either the D.C. Circuit or the Supreme Court.  *See Grundmann v. Trump*, No. 25-5165, 2025 WL 1840641, at *1 (D.C. Cir. July 3, 2025), *reconsideration en banc denied*, No. 25-5165, 2025 WL 1995785 (D.C. Cir. July 16, 2025); *LeBlanc v. U.S. Privacy and Civil Liberties Oversight Board*, No. 25-5197, 2025 WL 1840591 (D.C. Cir. July 1, 2025); *Wilcox*, 145 S. Ct. at 1415 (staying the decision in *Harris*); *Harper v. Bessent*, No. 25-5258, 2025 WL 2426660 (D.C. Cir. Aug. 21, 2025); *Slaughter*, 2025 WL 2692050 (Mem).  Even the concurrence cited by Plaintiffs in *Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025), stated that "inability to perform [] statutory functions likely does not, in itself, constitute irreparable harm, even if the harm is significant," *id.* at *7 (Pan, J., concurring), but it concluded that irreparable harm existed there because, in Judge Pan's view, the President did not have the statutory authority to remove the officer from her position, *id.*  Here, by contrast, there is no question that the President—and the President alone—has the power to remove Board members.  48 U.S.C. § 2121(e)(5)(B).

Plaintiffs' claim of irreparable harm is also contradicted by their delay in filing suit and the fact they are uncompensated.  In stark contrast to the cases Plaintiffs cite, Plaintiffs put off suit by *weeks* after their termination.  *See, e.g.*, *Dellinger*, 768 F. Supp. 3d at 37 (special counsel notified

of removal on Friday, February 7 at 7:22 p.m. and filed a lawsuit on Monday, February 10); *Grundmann*, 770 F. Supp. 3d at 172-73 (member of the Federal Labor Relations Authority notified of removal on February 10 at 10:46 p.m. and filed a lawsuit on February 13); *Harris*, 775 F. Supp. 3d at 171-72 (member of Merit Systems Protection Board notified of removal on February 10 and filed a lawsuit on February 11).  Here, by contrast, none of the Plaintiffs depended on their Board position for their income, and each waited between five and seven weeks from removal before seeking relief.  That significant delay belies any claim of urgency—Plaintiffs' "cries of urgency are sharply undercut by [their] own rather leisurely approach to the question of preliminary injunctive relief," especially because the delay is "not attributable to intervening events."  *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004).  Plaintiffs' request to be reinstated well after they were removed so that they can continue their positions does not come close to a "genuinely extraordinary situation."  *See Sampson*, 415 U.S. at 92.

      2.     The final two preliminary injunction factors, the public interest and the balance of the equities, also weigh against granting Plaintiffs' motion.  Those factors merge when the Executive is a party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  And both factors tilt decisively against granting an injunction here, as granting an injunction would create "the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation."  *Trump v. Wilcox*, 145 S. Ct. 1415 (2025).

     The government would face a serious risk of irreparable harm were the Court to grant the Motion.  In the context of Executive Branch officer removals, the Supreme Court has recognized that the government faces irreparable harm from orders allowing removed officers to continue exercising executive power after they have been removed from office.  *See Wilcox*, 145 S. Ct. at 1415; *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).  The Supreme Court has consistently

reinforced that the risk of harm to the government outweighs the rights of removed board members of the National Labor Relations Board, *Wilcox*, 145 S. Ct. at 1415; Merit Systems Protection Board, *id.*; Consumer Product Safety Commission, *Boyle*, 145 S. Ct. at 2654; and Federal Trade Commission, *Slaughter*, 2025 WL 2692050 (Mem), all of whom were removed without cause. Although the removed Board members are not officers of the United States, *see Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, 590 U.S. 448, 471-72 (2020), and thus do not necessarily exercise the same sort of executive power as the removed NLRB, MSPB, CPSC, and FTC members and commissioners, they are similarly appointed by the President to carry out the duties statutorily assigned to them, and permitting them to continue serving despite the President's concerns with their service would risk substantial harm to the government.

Against the lack of any irreparable harm to their personal interests shown by Plaintiffs, the balancing of interests strongly favors the government. The removals should remain in effect during the pendency of the litigation, and if Plaintiffs ultimately succeed in the litigation, the Court can decide the appropriate remedy at that time.

## V.     Plaintiffs Cannot Demonstrate Entitlement to Mandamus Relief.

The Court should also deny Plaintiffs' request for a writ of mandamus. "A writ of mandamus is an extraordinary remedy that is available only when certain conditions are met, and this is true under both federal and Puerto Rico law." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 985 F.3d 122, 127 (1st Cir. 2021). The writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consolidated Edison Co. v. Ashcroft*, 286 F.3d 600, 606 (D.C. Cir. 2002). Plaintiffs have not established that

anyone owes them a "clear nondiscretionary duty," and the selection of who should be members of the Board is certainly not a mere ministerial task.

Additionally, Plaintiffs have not established a "clear and indisputable" right to the writ, *see In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 985 F.3d at 127, because courts do not have the power to order reinstatement, as discussed *supra*.

## VI. If the Court Issues Injunctive Relief, A Bond Is Required.

If the Court finds injunctive relief appropriate, it "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). While "a district court retains substantial discretion to dictate the terms of an injunction bond," *Maine v. USDA*, No. 1:25-CV-00131-JAW, 2025 WL 1088946, at *29 (D. Me. Apr. 11, 2025), "injunction bonds are generally required," *NTEU v. Trump*, No. 25-5157, slip op. at 5 n.4 (D.C. Cir. May 16, 2025) (per curiam).

## CONCLUSION

For the above stated reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: September 28, 2025              Respectfully submitted,

                                              BRETT A. SHUMATE
                                              Assistant Attorney General
                                              Civil Division

                                              ERIC J. HAMILTON (G04403)
                                              Deputy Assistant Attorney General
                                              Federal Programs Branch

                                              CHRISTOPHER R. HALL
                                              Assistant Branch Director

W. STEPHEN MULDROW
United States Attorney
350 Chardon Avenue
Torre Chardon, Suite 1201
Hato Rey, Puerto Rico, 00918

*s/Priscila M. Acevedo*
PRISCILA M. ACEVEDO
Assistant United States Attorney
USDC-PR No. 307301
Tel: 787-282-1847
priscila.acevedo@usdoj.gov

*/s/ J. Stephen Tagert*
J. STEPHEN TAGERT (G04402)
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-8486
stephen.tagert@usdoj.gov

*Counsel for Defendants President Donald J. Trump and Sergio Gor*